Robert L. McDaniel
Individual
4919 Natural Bridge
Kingwood, Texas 77345
(281) 844-7364



Pro se Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

RELIANT TECHNOLOGIES,                    )
a Delaware corporation,                  )
                                         )
        Plaintiff,                       )
                                         )   Case No. C08-2515 MMC
v.                                       )
                                         )   **DEFENDANT'S MOTION TO**
ROBERT L. McDANIEL,                      )   **DISMISS FOR LACK OF**
an individual,                           )   **PERSONAL JURISDICTION**
                                         )
        Defendant.                       )

Defendant Robert L. McDaniel ("Mr. McDaniel") hereby respectfully files this Motion to Dismiss for Lack of Personal Jurisdiction. Mr. McDaniel, a resident of Texas, contends that this court lacks personal jurisdiction over him. Defendant respectfully requests that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction.

## I.    FACTUAL BACKGROUND

On June 19, 2008, Plaintiff filed a Complaint against Mr. McDaniel. The Complaint alleges that Mr. McDaniel is liable for cybersquatting under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition under both Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), and California Unfair Practices Act, Cal. Bus. & Prof. Cod § 17200 et seq. (Complaint at ¶¶ 29, 34, 37, 40).

It appears that Plaintiff chose this venue because its principal place of business is in California, not because of any evaluation of personal jurisdiction over Mr. McDaniel. Although Plaintiff's Complaint fails to address the issue of personal jurisdiction, the facts show that Mr. McDaniel has no contacts with California much less sufficient contacts to form a basis for personal jurisdiction.

As shown in the Affidavit of Robert L. McDaniel, attached as Exhibit A, Mr. McDaniel has: (1) never had offices located in California; (2) never leased or owned property in California; (3) never advertised in or directed advertising materials to California that related in any way to the Fraxel name or domain names including the Fraxel name; (4) never had employees in California; (5) never recruited employees in California; (6) never been registered to do business in California; (7) never appointed an agent for service of process in California; (8) never had financial accounts in California; (9) never sued or been sued in California prior to this lawsuit; (10) never employed or maintained a sales representative or manufacturing representative in California; (11) never sold products in or to California; or (12) contracted with any California resident whereby the contract would be performed in whole or part in California. *See* Exhibit A at ¶ 18.

As general background, Plaintiff is in the business of developing clinical solutions for rejuvenation of aging and environmentally damaged skin. Complaint at ¶ 7. Plaintiff advertises and sells FRAXEL medical laser systems for the administration of skin resurfacing treatments. Complaint at ¶ 8. Plaintiff owns U.S. Registration No. 2974491 for FRAXEL for "medical lasers," and promotes its goods on the internet through use of its primary website,

www.fraxel.com.    Complaint at ¶ 12, 15.    Mr. McDaniel is in the business of developing prospective patient leads for physicians who offer cosmetic procedures through their websites which incorporate the names of those procedures into the domain name coupled with a city name.    Exhibit A at ¶ 3.    For example, he owns www.LasVegas-Lipo.com. *Id.* His service of developing prospective patient leads provides a benefit both to the physicians and to companies that offer these cosmetic procedures, including Fraxel. *Id.*

After contracting a local physician who provides the specific treatment, he sets up a website on the domain name that informs prospective patients about that treatment and provides contact information for the local physician. *Id.* at ¶ 4.    Mr. McDaniel does not place any other advertising on the site. *Id.* Only after Mr. McDaniel develops the content for the site does it become searchable by customers. *Id.* at ¶ 5.    Thus, after the site content is developed, when a customer searches on Google for Las Vegas Lipo, his website would likely show up somewhere in the search results. *Id.* The prospective patient then contacts the physician in that area for treatment and the physician is provided with a record of the phone call or form submission. *Id.* at ¶ 6.    Although the phone number is owned by Mr. McDaniel, he forwards all calls directly to the physician and the physicians pay him for this prospective patient lead service on a per call basis. *Id.*

Mr. McDaniel purchased the domain name FraxelDetroit.com for the purpose of promoting Dr Charles Mok in Detroit, a local Detroit physician who owns or leases a Fraxel medical laser system. *Id.* at ¶ 7.    Mr. McDaniel notes that registration and use of similar names is common practice among these physicians who have purchased and use a Fraxel laser in their practice. *Id.*    Mr. McDaniel currently has advertising in place for Dr. Mok at http://adsmartmedical.com/Dr_Mok_Fraxel.htm. *Id.* He had intended to transfer the advertising

to the domain name FraxelDetroit.com, but has not done so. *Id.* Thus, he has never made any use of the domain name FraxelDetroit.com, and he has never made any profit or received any financial benefit from the domain name FraxelDetroit.com. *Id.*

Mr. McDaniel also registered 56 other domain names incorporating the FRAXEL trademark coupled with a city name with plans to explore existing and new relationships with physicians that provide Fraxel treatments using a Fraxel laser manufactured by Plaintiff. *Id.* at ¶ 8. He has not done anything, beyond registration, with the other 56 domain names, and thus has not received any financial benefit from any domain name that includes the Fraxel name. *Id.* As Mr. McDaniel is in the business of developing prospective patient leads for physicians who perform Fraxel procedures, his service would not be readily identifiable without using the word "Fraxel" in the domain names he utilizes as part of his service. *See id.* at ¶ 17. Thus, in order to effectively identify his services to the class of consumers interested in locating physicians who perform Fraxel procedures, it is reasonably necessary for Mr. McDaniel to use the word "Fraxel."

In addition, Mr. McDaniel has never caused or paid for parking or advertising on any of the Fraxel domains he registered or purchased. *Id.* at 13. Because there was no content to display on the sites, none of the domain names would have likely been displayed in any search results by Google. *Id.* at ¶ 10, 12. Consequently, for anyone to find the domain names that Mr. McDaniel has registered incorporating the name FRAXEL, they would be required to type the exact domain address directly in the address bar on their web browser. *Id.* at 10. Upon finding the site, they would land on a page showing the domain registrar GoDaddy's standard ads that it displays on all domains that have yet to be developed. *Id.* After the suit was filed, Mr. McDaniel learned that GoDaddy generates these parking pages and refers to the "parking page"

as a "free feature." *Id.* GoDaddy, however, is the only one that benefits from this "free feature" unless the domain name owner registers for parking and pays a fee for that feature. *Id.* Mr. McDaniel did not pay for, request or acquiesce to the ads set up by GoDaddy, and has not received any monetary benefit from GoDaddy's parking pages. *Id.* at ¶ 11. In fact, GoDaddy has still not removed its ads from the Fraxel domains despite Mr. McDaniel's written request to do so. *Id.*

Mr. McDaniel intended to use the domain names as soon as he made an agreement with a physician in the city whose name is contained in the domain names he purchased. *Id.* at ¶ 14. In some of the cities he has existing contracts with physicians who may provide Fraxel treatments, but he has never set up any advertising for these physicians using any of the Fraxel domain names. *Id.* at 14. Contrary to the allegations in the Plaintiff's Complaint, Mr. McDaniel has not and does not use the Fraxel domain names to direct users to web sites that link to various commercial web sites, or web sites which offer skin laser products that compete with those offered by Plaintiff. *Id.* at ¶ 15. The only possible way for anyone to be redirected from one of the Fraxel domains to any other domain would be through GoDaddy's placement of Google ads on the parking sites that Mr. McDaniel did not request. *Id.*

Before the lawsuit was filed, Mr. McDaniel received no warning and believed he would be providing a lawful service to the prospective physicians that was also to the advantage of Plaintiff. *Id.* at ¶ 16. The more his advertising attracts patients to physicians for use of the Fraxel laser, the more money Plaintiff makes for the sale or lease of the laser to the physician. *Id.* To resolve this matter, Mr. McDaniel attempted to transfer the domain names to Plaintiff but was unsuccessful because this suit has locked the domain name and Google will not transfer them. *Id.*

In order for Mr. McDaniel to provide his advertising service to physicians who use the Fraxel laser, it is critical that he be able to use the Fraxel name in the advertising to readily identify the services being offered by the physician. *Id.* at ¶ 17. Because Fraxel provides a unique type of cosmetic treatment, Mr. McDaniel cannot accurately describe what service is being offered without using the Fraxel name. *Id.* Mr. McDaniel's use is reasonably necessary to identify his service. Moreover, use of the word "Fraxel" does not suggest that Mr. McDaniel or anyone other than Plaintiff is the creator of the Fraxel laser system. Rather, Mr. McDaniel's service and use of the domain names is intended to merely direct prospective patients to authorized users of Fraxel, without any claim to being the source of Fraxel. *See id.* at ¶¶ 4-6. Thus, Mr. McDaniel's use of the word "Fraxel" in the domain names is nominative.

## II.    ARGUMENT AND AUTHORITY

Defendant Mr. McDaniel lacks the minimum contacts required under the Due Process clause of the United States Constitution to confer personal jurisdiction in this Court. Furthermore, requiring the Defendant to litigate this dispute in this District offends traditional notions of fair play and substantial justice, and therefore is unreasonable.

### A.    Legal Standard Regarding Personal Jurisdiction

In a diversity action, a federal court may exercise jurisdiction over a non-resident defendant only if jurisdiction is proper under the law of the state where the action was filed, and if that exercise comports with the Due Process Clause of the Constitution. *Fireman's Fund Insurance Company v. National Bank Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484-85 (9th Cir. 1993). Thus, the plaintiff must establish that California's long-arm statue confers personal jurisdiction over defendant, and that

this Court's exercise of jurisdiction does not violate due process. *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). California's long arm statute, *Code of Civil Procedure* § 410.10, provides that jurisdiction may be exercised "on any basis not inconsistent with the Constitution of this state or of the United States." Therefore, a California court may exercise jurisdiction over a non-resident defendant so long as due process concerns are not implicated. *Szabo v. Medical Information Bureau*, 127 Cal.App.3d 51 (1981).

The United States Supreme Court has set forth a two-pronged test for determining whether a district court's assumption of personal jurisdiction over a non-resident complies with the Due Process Clause. Personal jurisdiction is proper if: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" in that state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In an action by a resident plaintiff against a non-resident defendant, the burden is on the plaintiff to show that the non-resident defendant has sufficient contacts with California to subject the defendant to personal jurisdiction in California. *See Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984); *Alexander v. Heater*, 193 Cal.App.3d 1241, 1246 (1987). When defendant's motion to dismiss is made as its initial response, plaintiff must make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). A plaintiff can satisfy this burden by establishing that either: 1) the defendant has had continuous and systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or 2) the defendant has had sufficient

minimum contacts with the forum to subject him or her to the specific jurisdiction of the court. *See Core-Vent Corp.*, 11 F.3d at 1485; *Williams v. Brown Family Communities*, No. C-05-1337 JCS, 2005 WL 1651049 (N.D. Cal. July 12, 2005). Under these strict requirements, the facts in this case do not establish a basis for the Court to exercise personal jurisdiction over Mr. McDaniel in the Northern District of California.

## B.    Defendant Lacks Sufficient Minimum Contacts with the Forum

Mr. McDaniel lacks sufficient minimum contacts with California to confer specific or general personal jurisdiction in this Court. "If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities." *Data Disc, Inc.*, 557 F.2d at 1287. In addition, personal jurisdiction may be based on specific jurisdiction which requires an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. *Id.* Specific jurisdiction is satisfied only if the defendant has "purposefully directed" its activities at residents of the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). Additionally, the litigation must result from injuries that "arise out of or relate to" those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### 1.  No General Jurisdiction

There is clearly no basis to extend general personal jurisdiction over Mr. McDaniel. General jurisdiction exists when a defendant is domiciled in the forum state or when its activities there are "substantial" or "continuous and systematic." *Helicopteros*, 466 U.S. at 414-16. The standard for establishing general jurisdiction is "fairly high," and requires that the defendant's

contacts be of the sort that approximate physical presence. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986); *see also Gates Lear Jet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Plaintiff cannot establish that the Defendants had "substantial" and "continuous and systematic" activities within the forum state. Such activities must be pervasive in order to establish general jurisdiction. *Data Disc Inc.*, 557 F.2d at 1287.

Mr. McDaniel falls far short of having "substantial" or "continuous and systematic" contacts necessary to confer general jurisdiction. Mr. McDaniel has: (1) never had offices located in California; (2) never leased or owned property in California; (3) never advertised in or directed advertising materials to California that related in any way to the Fraxel name or domain names including the Fraxel name; (4) never had employees in California; (5) never recruited employees in California; (6) never been registered to do business in California; (7) never appointed an agent for service of process in California; (8) never had financial accounts in California; (9) never sued or been sued in California prior to this lawsuit; (10) never employed or maintained a sales representative or manufacturing representative in California; (11) never sold products in or to California; or (12) contracted with any California resident whereby the contract would be performed in whole or part in California. *See* Exhibit A at ¶ 18.

### 2.  No Specific Jurisdiction

In addition, the Court lacks specific personal jurisdiction over Mr. McDaniel. Applying the principles of *International Shoe* and *Burger King*, the Ninth Circuit has developed a three-prong test to determine whether a district court may exercise specific jurisdiction over a nonresident defendant: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections; (2)

the claim must be one which arises out of or results from the defendant's forum-related activities;
and (3) exercise of jurisdiction must be reasonable. *See Yahoo! Inc. v. La Ligue Contre Le
Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006); *Schwarzenegger v. Fred
Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2006); *Ballard v. Savage*, 65 F.3d 1495, 1498
(9th Cir. 1995); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990); *Data Disc,
Inc.*, 557 F.2d at 1287. Plaintiff must satisfy each element of the Ninth Circuit's three-prong test
in order to defeat this Motion to Dismiss.

The "purposeful availment" requirement is satisfied only where the plaintiff demonstrates
that the defendant's contacts with the forum state create a "substantial connection" with the
forum state, and where the defendant's conduct and connection with the forum are such that he
should reasonably anticipate being haled into court there. *Burger King Corp.*, 471 U.S. at 474-
75. Accordingly, the purposeful availment requirement ensures that defendants will not be
"haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Terracom v.
Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (quoting *Burger King Corp.*, 471 U.S. at 475
(1985)). Applying the Ninth Circuit's standards and the overwhelming weight of authority
addressing personal jurisdiction in the Internet context supports dismissal of the instant matter.

The Ninth Circuit addressed the issue of purposeful availment as applied to Internet
websites in *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997). The *Cybersell*
Court held that in order for a website to give rise to personal jurisdiction, the website must have
some presence in that jurisdiction and it is not sufficient that it merely operates a "passive"
website. *Id.* at 419-20. In *Cybersell*, the Ninth Circuit held that registering a domain name
identical to a trademark and posting a web site via such domain name on the Internet is not
sufficient to subject a party domiciled in one state to jurisdiction in another. *Id.* at 418. There

must be "more" to demonstrate that the defendant purposefully directed his activity in a substantial way toward the forum state. *Id.*

In *Cybersell*, defendant Cybersell, Inc. (a Florida corporation) registered a domain name using the term "CyberSell." Plaintiff Cybersell, Inc. (an Arizona corporation) had submitted an application to the United States Patent and Trademark Office to register the name CYBERSELL as a service mark, and had previously operated a web site using the mark. At the time Cybersell-FL registered the domain name, Cybersell-AZ's web site had been taken down for reconstruction and the application for the service mark had not yet been approved. When Cybersell-AZ discovered defendant's web site, it filed a trademark infringement action in the District of Arizona. The Court found that defendant's use of the Cybersell name on an essentially passive web site advertisement did not constitute purposeful availment of the privilege of doing business in the state of Arizona because defendant had no contacts with Arizona other than maintaining a web page accessible to anyone over the Internet. *Id.* at 419.

The Ninth Circuit's reasoning in *Cybersell* applies in the present matter. Like the defendant in that case, Defendant's websites have no content and do not contain any specific advertising direction towards any particular forum. The advertisements on the current websites, placed on the parking sites by GoDaddy and against Defendant's requests, are distributed throughout the Internet without any purposeful direction towards any particular forum. The availability of this information for parties who wish to research it is insufficient to establish jurisdiction in California. The Court should be disinclined to adopt a rule whereby the mere availability of information over the Internet is sufficient to establish purposeful availment in a forum.

The foregoing authority demonstrates that internet websites alone are not sufficient to establish personal jurisdiction. Applying Ninth Circuit authority to the present matter, Mr. McDaniel would not have subjected himself to jurisdiction by having domain names using the term "Fraxel" that can be viewed by anyone over the Internet. In addition, although Mr. McDaniel did not enter into any contracts with any California physicians, even if he had entered into a contract with a physician, he would still not necessarily be subject to California state jurisdiction. *See Siskiyou Properties, LLC v. Bennett Holdings, LC*, 13 Fed. Appx. 553, No. 99-36175, 2001 WL 713289 (9th Cir. June 25, 2001) (citing *Burger King*, 471 U.S. at 478-79) ("[A] contract alone does not automatically provide the required minimum contacts for the exercise of personal jurisdiction."). Accordingly, Mr. McDaniel's use of Fraxel in domain names which are accessible over the Internet cannot be the basis of personal jurisdiction over Defendant. For this reason alone, the instant Motion to Dismiss should be granted.

If the Court finds that Defendant did not purposefully avail himself of this forum, then it does not need to reach the second and third prongs of the Ninth Circuit's specific jurisdiction test. However, if the Court does address those prongs, it should find that Plaintiff cannot establish that the claim "arises out of" actions in the state of California and that it is unreasonable to find jurisdiction in California. The Ninth Circuit has adopted a "but for" test to determine whether a claim arises out of forum-related activities. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). The "arising out of" requirement of the specific jurisdiction test is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom*, 49 F.3d at 561. In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that "the 'but for' test is consistent with the basic function of the 'arising out of' requirement – it

preserves the essential distinction between general and specific jurisdiction. . . . [and] preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum." 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).

Plaintiff cannot establish that "but for" the contacts between Mr. McDaniel and the forum state, the cause of action would not have arisen. To the contrary, Plaintiff's allegations arise from Defendant's alleged conduct in other jurisdictions. Defendant created domain names available through the Internet. Plaintiff does not allege any relationship between itself and Defendant, in California or otherwise, other than the mere fortuitous fact that Plaintiff's principal place of business is in California. Accordingly, the Plaintiff cannot satisfy the Ninth Circuit's "but for" requirement to find specific jurisdiction.

Assuming that the court finds in favor of the Plaintiff on the first two prongs, jurisdiction would still be wanting because the exercise of personal jurisdiction would be unreasonable in this case. The reasonableness prong of the Ninth Circuit test requires that the Court's exercise of jurisdiction comport with "fair play and substantial justice," thus satisfying the second prong of the *International Shoe* test. Accordingly, in the Ninth Circuit, "reasonableness" is determined by seven intertwined factors: (1) the extent of purposeful interjection; (2) the burden on the defendant to defend the suit in the chosen forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Shute*, 897 F.2d at 386.

No one factor is dispositive, and the district court must balance all seven factors. *Core-Vent Corp.*, 11 F.3d at 1488. Where, as here, the exercise of jurisdiction is clearly unreasonable, personal jurisdiction may be defeated. *See Fed. Deposit Ins. Corp. v. British-American Ins. Co. Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). The Ninth Circuit has held that "[t]he degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction." *Data Disc, Inc.*, 557 F.2d at 1288. Mr. McDaniel did not purposefully interject himself into the forum state by simply purchasing internet domains using the word "Fraxel" that could be accessed around the world. Mr. McDaniel's interjections into California, if any, are attenuated and merely the result of the global availability of the Internet.

Furthermore, the second factor in the reasonableness test clearly weighs in favor of dismissal. Defendants' burden in proceeding in this forum is substantial. Where, as here, the defendant has "done little to reach out to the forum state," the burden of defending itself in a foreign state militates against exercising jurisdiction. *Fed. Deposit Ins. Corp.*, 828 F.2d at 1444. Indeed, "the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Terracom*, 49 F.3d at 561. The burden on Mr. McDaniel to litigate this claim in California is significantly greater than the burden facing Plaintiff. Defendant is an individual located in Texas, with insufficient funds to litigate a case half way across the country. Mr. McDaniel is willing to immediately transfer all of the domain names to Plaintiff and walk away. Mr. McDaniel does not have any assets other than a homestead and exempt property, and is not in a position to expend any resources to litigate this matter. Allowing the Plaintiff to hale Mr. McDaniel into a jurisdiction where he is not subject to any personal jurisdiction would not at all comport with "fair play and substantial justice."

The facts here show that California has no substantial interest in adjudicating this dispute. None of the actions forming the basis of Plaintiff's claims occurred in California. Nor does this case involve any significant California social policies. Mr. McDaniel's advertising and marketing efforts related to Fraxel lasers have not been directed at any residents of California. Exhibit A, at ¶ 18. In fact, Mr. McDaniel has yet to develop the sites that are specific to California. Thus, his marketing and advertising activities have had no impact on California citizens.

The efficiency and convenience of the forum also weigh against a finding of reasonableness. In evaluating the efficiency of the forum, the Ninth Circuit has looked primarily at the location of the witnesses and evidence. *Core-Vent*, 11 F.3d at 1489. In the present matter, the evidence will likely be the domain names and sites themselves, and the witnesses, if any, will be located all around the country. Thus, California is no more efficient or convenient than any other state. While litigating in any state other than California would no doubt inconvenience Plaintiff, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Id.* at 1490. Moreover, Plaintiff does not have a compelling interest in litigating in California and has alleged no facts indicating why this Court would be a convenient and effective forum for its claims, which do not further any California policies and are not designed to protect the interests of California residents. The only conceivable reason Plaintiff has for filing suit in the Northern District of California is that Plaintiff has its principal place of business in Mountain View, California.

Weighing the interests of the parties, forum, and witnesses, it is clear that the assertion of personal jurisdiction in California would impose a substantial burden, both physical and financial, on Mr. McDaniel and would be unreasonable. For all the foregoing reasons, a finding

of personal jurisdiction in California would violate traditional notions of fair play and substantial justice, and thus the "reasonableness" factor weighs in favor of granting Defendants' motion.

Accordingly, because the acts from which this Complaint arose occurred outside the State of California and Defendant did not purposely direct its activities or purposely avail itself of the privileges of doing business in California, the Defendants should not be subject to specific personal jurisdiction in this Court.

## C.    Attorney Fees

"Congress intended to authorize fees for defendants subjected to 'harassment' by trademark owners." *Noxell Corp v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 525 (D.C. Cir. 1985). In *Noxell*, the court found that by haling the defendant to a court "3000 miles from the place of their activity," the plaintiff trademark owner had committed " 'harassment' of the kind Congress meant to deter." *Id.* at 526. The court thus determined that the defendant, who succeeded in dismissing the trademark infringement case due to improper venue, qualified as a "prevailing party" under Lanham Act § 35 which provides in relevant part: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* at 524 (citing 15 U.S.C.A. § 1117(a)). In addition, the *Noxell* court held that "[s]omething less than 'bad faith,' . . . suffices to mark a case 'exceptional' " for purposes of the Lanham Act fee award provision. *Id.* at 526. Accordingly, the court awarded the defendant attorney fees because plaintiff's improper venue selection unreasonably imposed a hardship on the defendant.

Moreover, the Ninth Circuit has also held that "the mere absence of bad faith . . . does not render [a party] ineligible for attorney's fees" because "other exceptional circumstances may warrant a fee award." *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997). In *Stephen W. Boney, Inc. v. Boney Services, Inc.*, the Ninth Circuit affirmed the

district court's denial of attorney's fees because the defendant "failed to demonstrate that [the] case [was] exceptional." The court relied on plaintiff's statement that he did not intend to create hardship for the defendant and noted that nothing in the record showed otherwise. *Id.*

Plaintiff's attempt to hale Mr. McDaniel into a distant jurisdiction is no less unreasonable than the plaintiff's improper venue selection in *Noxell*. Thus, contrary to *Boney*, where there was a lack of evidence showing that the case was exceptional, this case is "exceptional" under *Noxell*. In addition, whereas the plaintiff in *Boney* did not intend to create hardship on the defendant, Plaintiff's filing of this Complaint in a distant jurisdiction and its failure to send Mr. McDaniel a warning letter in advance of filing suit, as would be customary for a suit against a small operator, show bad faith on the part of Plaintiff. Moreover, Mr. McDaniel has offered to transfer the domain names to Plaintiff and walk away, but Plaintiff persists in its attempt to impose this hardship on Mr. McDaniel. It is clear Plaintiff is acting in bad faith by proceeding with its Complaint in this distant forum where defendant is not subject to personal jurisdiction. If the Court grants Defendants motion to dismiss based on lack of personal jurisdiction, Defendant respectfully requests that this Court award Mr. McDaniel attorney fees related to his defense against this Complaint in this District.

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction.

A proposed order accompanies this motion.

s

Date: July _18_, 2008                                    Respectfully submitted,

                                                         Robert L. McDaniel
                                                         Pro se Defendant
                                                         4919 Natural Bridge
                                                         Kingwood, Texas 77345
                                                         (281) 844-7364
                                                         Email: bmcdaniel@adsmartmedical.com

## CERTIFICATE OF SERVICE

I hereby certify and declare under the penalty of perjury that the foregoing was served upon opposing counsel at the address listed below, via certified mail, return receipt requested on this _18th_ day of July, 2008:

Mr. Raymond I. Geraldson, Jr.
Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP
311 South Wacker Drive
Suite 5000
Chicago, Illinois 60606
312-445-8000
Fax: 312-544-8015
Email: rig:pattishall.com
*Counsel for Reliant Technologies*

Mr. Clement L. Glynn
Glynn & Finley
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
925-210-2800
Fax: 925-945-1975
Email: cglynn@glynnfinley.com
*Counsel for Reliant Technologies*

Robert L. McDaniel

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RELIANT TECHNOLOGIES,<br>a Delaware corporation, | §<br>§ | |
| | § | |
| Plaintiff, | §<br>§ | Case No. C08-2515 MC |
| | § | |
| v. | § | |
| | § | |
| ROBERT L. McDANIEL,<br>an individual, | §<br>§ | |
| | § | |
| Defendant. | | |

## [PROPOSED] ORDER

Before the Court is Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction.

The Court finds that Defendant's Motion has merit and should be **GRANTED**.

It is therefore **ORDERED** that Defendant's Motion To Dismiss For Lack Of Personal

Jurisdiction is **GRANTED**.

**SO ORDERED**.

SIGNED on _____, 2008.

_____
MAXINE M. CHESNEY
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

RELIANT TECHNOLOGIES,           )
a Delaware corporation,         )
                                )
Plaintiff                       )
                                )
v.                              )         **Case No. C08-2515 MC**
                                )
                                )
ROBERT L. McDANIEL,             )
an individual,                  )
                                )
Defendant                       )
_____)

### Affidavit of Robert L. McDaniel

*STATE OF TEXAS*          §
                          §
*COUNTY OF HARRIS*        §

ON THIS DAY, before me, the undersigned authority, appeared Robert L. McDaniel who, upon

his oath, deposed and said:

1.    My name is Robert L. McDaniel.  I am over the age of 18 and competent to give this

      affidavit.  The facts stated herein are within my personal knowledge and are true and

      correct.

2.    I am the individual Defendant in the above referenced case.

3.    I am in the business of developing prospective patient leads for physicians who offer

      cosmetic procedures through their websites which incorporate the names of those

      procedures into the domain name coupled with a city name.  For example, I own

      www.LasVegas-Lipo.com.  My service of developing prospective patient leads provides

      a benefit both to the physicians and to companies that offer these cosmetic procedures,

      including Fraxel.

1 of

4. After contracting with a local physician who provides a specific cosmetic treatment, I set up a website on the domain name that informs prospective patients about that treatment and provides contact information for the local physician. There is no other advertising on the site. For example, I do not place Google ads on the websites that I set up.

5. After I develop the content for the site, when a customer searches on Google for Las Vegas Lipo, my website would likely show up somewhere in the search results.

6. The prospective patient then contacts the physician in that area for treatment and my system provides the physician with a record of the phone call or form submission. The phone number is owned by me but forwards any calls directly to the physician. The physicians pay me for this prospective patient lead service on a per call basis.

7. Following this business method, I purchased the domain name FraxelDetroit.com for the purpose of promoting Dr Charles Mok in Detroit, a local Detroit physician who owns or leases a Fraxel medical laser system. Registration and use of similar names is common practice among physicians who have purchased and use a Fraxel laser in their practice. I currently have advertising in place for Dr Mok at http://adsmartmedical.com/Dr_Mok_Fraxel.htm. which makes incidental use of the Fraxel name. I had intended to transfer this advertising to the domain name FraxelDetroit.com, but have not done so. Thus I have never made any use of the domain name FraxelDetroit.com, and I have never made any profit or received any financial benefit from the domain name FraxelDetroit.com.

8. I also registered 56 other domain names incorporating the Fraxel name coupled with a city name with plans to explore existing and new relationships with physicians that

2 of

provide Fraxel treatments using a Fraxel laser manufactured by Reliant Technologies, Inc.

9.    I have also not done anything, beyond registration, with the other 56 domain names. Thus, I have never used or received any financial benefit from any domain name that includes the Fraxel name.

10.    None of the domain names including the Fraxel name can be found by use of any search engine. For anyone to find the domain names that I have registered incorporating the name Fraxel, they would have to type the exact domain address directly in to the address bar on their web browser. When they did, they would land on a page showing the standard parking pages of my domain registrar GoDaddy for all domains that it sells that have not been developed yet into operating websites. I learned after this suit was filed that GoDaddy generates these parking pages and refers to the "parking page" as a "free feature". GoDaddy, however, is the only one that benefits from this "free feature" unless the domain name owner registers for parking and pays a fee for that feature.

11.    I did not pay for, request or acquiesce to the parking pages set up by GoDaddy, and did not know about these parking pages until after this suit was filed. I have not received any monetary benefit from GoDaddy's parking pages based on any of the Fraxel domain names I registered or purchased.

12.    None of the Fraxel domain names I registered or purchased would have likely have been displayed in any search results by Google since there was no content to trigger the search engine robots to display results. Domains never get picked up in Google search listings until you put some content on them or get another website to link to them, neither of

3 of

which I did for any of these Fraxel domain names. To date, GoDaddy has still not removed their ads from the Fraxel domains despite my written request to do so.

13.  I never caused or paid for parking or advertising of any of the Fraxel domains I registered or purchased.

14.  I intended to use the Fraxel domain names as soon as I made an agreement with a physician in the city whose name is contained in the domain names I purchased. In some of the cities I have existing contracts with physicians who may provide Fraxel treatments, but I have never set up any advertising for these physicians using any of the Fraxel domain names.

15.  Through the Fraxel domain names, I have not and do not direct users to web sites that link to various commercial web sites. Through the Fraxel domain names, I have not directed users to web sites which offer skin laser and car products which compete with those offered by Reliant. The only possible way for anyone to be redirected from one of these Fraxel domains to any other domain would be through GoDaddy's placement of Google ads on the parking sites that I did not request and receive no material financial from.

16.  Before the lawsuit was filed, I received no warning and believed I would provide a lawful service to prospective physician customers that was to the advantage of Reliant Technologies. The more my advertising attracts patients to physicians for use of the Fraxel laser, the more money Reliant makes for the sale or lease of the laser to the physician. To resolve this matter, I attempted to transfer the domain names to Reliant but was unsuccessful because the law suit filed against me by Fraxel has locked the domain name and the registrar will not transfer them.

4 of

17.     To provide my advertising service to physicians who use the Fraxel laser, it is critical that I be able to use the Fraxel name in the advertising to explain to prospective patents what service is being offered by the physician. Fraxel provides a unique type of cosmetic treatment. Without using the Fraxel name, I cannot accurately describe what service is being offered.

18.     I have (1) never had offices located in California; (2) never leased or owned property in California; (3) never advertised or directed advertising materials to California that related in any way to the Fraxel name or domain names including the Fraxel name; (4) never had employees in California; (5) never recruited employees in California; (6) never been registered to do business in California; (7) never appointed an agent for service of process in California; (8) never had financial accounts in California; (9) never sued or been sued in California prior to this lawsuit; (10) never employed or maintained a sales representative or manufacturing representative in California; (11) never sold products in or to California; or (12) never contracted with any California resident relating in any way to the Fraxel name or domain names including the Fraxel name.

FURTHER AFFIANT SAYETH NAUGHT

Robert L. McDaniel

Subscribed to and sworn before me on this, the _____ day of July, 2008

Notary Public in and for the State of Texas



5 of