1  PATTISHALL, MCAULIFFE, NEWBURY,
     HILLIARD & GERALDSON LLP
2  Raymond I. Geraldson, Jr.
   Thad Chaloemtiarana
3  Alexis E. Payne
   311 South Wacker Drive
4  Suite 5000
   Chicago, Illinois 60606
5  Telephone:  (312) 554-8000
   Facsimile:  (312) 554-8015
6  Email:  RIG@pattishall.com
           TC@pattishall.com
7          AEP@pattishall.com

8

9  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN
10 One Walnut Creek Center
   100 Pringle Avenue, Suite 500
11 Walnut Creek, CA 94596
   Telephone: (925) 210-2800
12 Facsimile: (925) 945-1975
   Email:  cglynn@glynnfinley.com
13

14 Attorneys for Plaintiff, Reliant Technologies, Inc.

15
                    UNITED STATES DISTRICT COURT
16
                   NORTHERN DISTRICT OF CALIFORNIA
17

18                                          )    **Case No. 3:08-cv-2515**
                                            )
   RELIANT TECHNOLOGIES, INC., a            )
19 corporation,                             )    **Judge Maxine M. Chesney**
                                            )
20                      Plaintiff,          )    **PLAINTIFF'S OPPOSITION TO**
                                            )    **DEFENDANT'S MOTION TO DISMISS**
21       vs.                                )    **FOR LACK OF PERSONAL**
                                            )    **JURISDICTION**
22 ROBERT LANE McDANIEL, an                 )
   individual,                              )
23                                          )
                        Defendant.          )
24 ─────────────────────────────────       )

25

26

27

28

1    **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
2    **DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

3    I.    **INTRODUCTION**

4           Plaintiff, Reliant Technologies, Inc. ("Reliant"), based in Mountain View, California,

5    brings this action to stop Defendant's cybersquatting and infringement of Reliant's FRAXEL

6    trademark.  Defendant is a serial cybersquatter who has registered fifty-seven (57) domain names

7    that combine Reliant's FRAXEL trademark with a city or other geographic area, *e.g.*,

8    <fraxelsanfrancisco.com>.  By his own admission, Defendant registered these infringing domain

9    names in an attempt to profit from the use of Reliant's FRAXEL trademark in a nationwide

10   marketing scheme.  *See* Affidavit of Robert L. McDaniel, attached to Defendant's Motion to

11   Dismiss ("McDaniel Aff."), ¶¶ 3-8, 14.

12          Defendant has specifically targeted California by engaging in the following conduct: (1)

13   registering and attempting to use domain names that infringe the trademark of a California-based

14   business in a deliberate attempt to trade on the goodwill of that trademark; (2) registering fifteen

15   infringing domain names that target and refer to geographic locations in California, more than

16   twice the number of infringing domain names targeting any other state; and (3) implementing a

17   business plan that involves soliciting contracts with California physicians offering services in

18   California.

19          Defendant now seeks to avoid personal jurisdiction in this forum with his present Motion

20   to Dismiss (Doc. 11).  As discussed below, the Court may properly exercise personal jurisdiction

21   over Defendant in this case.  To the extent the Court has any doubt on this issue, Reliant requests

22   limited discovery to address more fully the issues raised in Defendant's motion.  Accordingly,

23   Reliant respectfully requests that the Court deny Defendant's Motion to Dismiss or, alternatively,

24   grant Reliant limited discovery to establish further Defendant's contacts with California.

25   II.   **STATEMENT OF THE CASE**

26          Reliant advertises and sells FRAXEL medical laser systems ("FRAXEL Systems") for

27   the administration of skin resurfacing treatments, and it owns a federal trademark registration for

28   FRAXEL for "medical lasers" (the "FRAXEL Mark"). (Doc. 1, Complaint ("Compl."), ¶¶ 8, 12;

- 1 -

1    U.S. Registration No. 2,974,491). Reliant sells its FRAXEL Systems through a direct sales force

2    and third-party distributors, and it promotes its goods on the Internet through its primary web

3    site located at <www.fraxel.com>. (Declaration of Robert Kehl Sink ("Sink Decl."), ¶ 6;

4    Compl., ¶ 15). Reliant, which is located in Mountain View, California, employs approximately

5    181 people, approximately 133 of whom are located in California. (Sink Decl., ¶ 3).

6         The State of California constitutes one of the most significant markets for Reliant's

7    FRAXEL Systems, if not the most significant market. (Sink Decl., ¶ 7). For example,

8    approximately twenty-three percent (23%) of Reliant's sales of its FRAXEL Systems in the

9    United States are made to plastic surgeons, dermatologists, and others in the State of California.

10    (*Id.*). Among other reasons, Southern California's concentration of plastic surgeons, cosmetic

11    surgeons, and dermatologists renders it a primary market for FRAXEL Systems. (*Id.*).

12    Defendant is an individual residing in Kingwood, Texas, a suburb of Houston. (Compl., ¶ 6).

13    Defendant registered fifty-seven (57) domain names that incorporate the FRAXEL Mark

14    combined with a city or other geographic area (the "FRAXEL Domain Names"). (Compl., ¶ 17).

15    The FRAXEL Domain Names include fifteen (15) domain names that incorporate a total of nine

16    (9) geographic locations in California, including Beverly Hills, Oakland, Orange County,

17    Riverside, Sacramento, San Bernardino, San Diego, San Francisco, and San Jose:

| | |
|---|---|
| <fraxelbeverlyhills.com> | <oaklandfraxel.com> |
| <fraxeloakland.com> | <riversidefraxel.com> |
| <fraxelorangecouny.com> | <sacramentofraxel.com> |
| <fraxelriverside.com> | <sanbernardinofraxel.com> |
| <fraxelsacramento.com> | <sandiegofraxel.com> |
| <fraxelsandiego.com> | <sanfranciscofraxel.com> |
| <fraxelsanfrancisco.com> | <sanjosefraxel.com> |
| <fraxelsanjose.com> | |

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    (*Id.*) The FRAXEL Domain Names that incorporate California locations account for more than

2    twenty-five percent (25%) of all the FRAXEL Domain Names, and constitute more than twice as

3    many locations as any other state. (*See id.*) The FRAXEL Domain Names include only four

4    locations within Defendant's home state of Texas, and the only other states with more than one

5    are Florida and Ohio (with three and two, respectively). (*See id.*)

6           In his affidavit, Defendant admits that he intends to contract with physicians in the cities

7    for which he has registered FRAXEL domains. (McDaniel Aff., ¶ 14). He admits that "I

8    intended to use the Fraxel domain names as soon as I made an agreement with a physician in the

9    city whose name is contained in the domain names I purchased." (*Id.*). According to his

10   "business method," Defendant claims that he intends to develop web sites at each of the

11   FRAXEL Domain Names for physicians located in the corresponding geographic location. (*Id.*

12   at ¶¶ 4, 14). These physicians would pay Defendant each time a patient contacted the physician

13   for treatment through the FRAXEL Domain Name. (*Id.* at ¶ 6). Currently, the web sites located

14   at the FRAXEL Domain Names contain links to web sites offering products and services for

15   laser treatment, skin treatment, and hair removal, including the products and services of Reliant's

16   competitors. (*See e.g.,* Declaration of Colin O'Brien ("O'Brien Decl."), ¶ 8, and Exhibits F and G

17   to O'Brien Decl.). For example, the web site located at <www.sanfranciscofraxel.com> displays

18   a link t BOTOX services offered in San Francisco. (Exhibit F to O'Brien Decl.).

19          Defendant portrays himself only as an individual who has registered these FRAXEL

20   Domain Names, but in actuality he operates a company called AdSmart Medical that engages in

21   medically-related advertising nationwide, including in California. For example, Defendant's

22   personal email address is "bmcdaniel@adsmartmedical.com," and he signs his emails with "Bob

23   McDaniel, AdSmart Medical.com." (O'Brien Decl., ¶ 4, and Exhibit A to O'Brien Decl.). On his

24   web site at <www.adsmartmedical.com>, Defendant, through AdSmart Medical, admits that it

25   "operates nationally" and claims to represent Fortune 500 clients. (*See* Exhibit B to O'Brien

26   Decl.). The AdSmart Medical web site also allows users to "Schedule a Complimentary

27   Consultation" by providing their name, email address, telephone number, how they prefer to be

28   contacted, and the best time to call. (*Id.*) In addition, the AdSmart Medical web site also allows

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1     users to submit online customer payments. (*Id.*) California residents can access and utilize the

2     services offered on the AdSmart Medical web site.

3           Despite Defendant's sworn statement in his affidavit and statements in his Motion to

4     Dismiss that he has "never sold products in or to California," (McDaniel Aff., ¶ 18), or

5     "contracted with any California resident whereby the contract would be performed in whole or in

6     part in California," (Motion to Dismiss, p. 2), he appears to have done those very things.  A

7     recently inactive web site indicates that Defendant, through AdSmart Medical, contracted with

8     Dr. Alex Kaplan, M.D., with locations in Los Angeles and Norco, California, to provide web site

9     advertising services.[1]  (Exhibit C to O'Brien Decl.).

10          Applying the law to the above record demonstrates that Defendant is subject to personal

11    jurisdiction in this forum.

12    **III.     ANALYSIS**

13          **A.       Defendant is Subject to Specific Personal Jurisdiction in this Forum**

14                   1.       Standard

15          Before a trial or hearing, a plaintiff is required only to make a *prima facie* showing of

16    jurisdiction. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Data*

17    *Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Allegations in the

18    complaint that are uncontroverted must be taken as true, and all factual disputes construed in a

19    light most favorable to the plaintiff. *Rio Properties,* 284 F.3d at 1019.

20          In the Ninth Circuit, courts engage in a two-step process for determining whether or not

21    exercise of personal jurisdiction over a defendant is proper. *Taubler v. Giraud*, 655 F.2d 991,

22    993 (9th Cir. 1981).  In the first step, the court determines if the state's long arm statute applies.

23    If it does, the court then analyzes whether or not application of the long-arm statute complies

24    with constitutional Due Process requirements. *Id.*

25

26

27

28

- 4 -

1          2. <u>Personal Jurisdiction Under California's Long-Arm Statute</u>

2          Under California law, "[a] court of this state may exercise jurisdiction on any basis not

3   inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. §

4   410.10. Because California grants personal jurisdiction to the fullest extent allowed under the

5   Constitution, this Court need only analyze whether or not the exercise of personal jurisdiction in

6   this case comports with Due Process. *Taubler*, 655 F.2d at 993.

7          3.          <u>This Court Has Specific Jurisdiction Over Defendant</u>

8          Personal jurisdiction may be founded on either general jurisdiction or specific

9   jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In this

10  case, Defendant is subject to specific jurisdiction based on the current record of the case,

11  including the facts alleged in the Complaint and Defendant's own affidavit, which contains facts

12  that all but admit specific jurisdiction. (*See* McDaniel Aff., ¶¶ 8, 14).

13         The Ninth Circuit applies a three-part test to determine if a district court may exercise

14  specific personal jurisdiction:

15

16  (1) The nonresident defendant must . . . perform some act by which he
    purposefully avails himself of the privilege of conducting activities in the forum,
17  thereby invoking the benefits and protections of its laws;

18  (2) the claim must be one which arises out of or results from the defendant's
    forum-related activities; and/or
19
    (3) exercise of jurisdiction must be reasonable.
20

21  *Panavision*, 141 F.3d at 1320.

22

23

24

25

26

---

27      [1] Defendant also makes various statements in his Motion to Dismiss that are outside the
    scope of the present Motion. Reliant does not address these statements, which are inappropriate
28  in this procedural context.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    Contrary to Defendant's contention that "Plaintiff must satisfy each element of the

2    Ninth Circuit's three-prong test in order to defeat this Motion to Dismiss," (Motion to

3    Dismiss, p. 10), the Ninth Circuit has abandoned the rule Defendant cites and now

4    applies a more "flexible approach" that emphasizes reasonableness over strict satisfaction

5    of all three prongs. *See Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189

6    n.2 (9th Cir. 2002) (citations omitted).

7         Where, as here, the plaintiff's claims sound in tort, the Court should analyze the first

8    prong under the "purposeful direction" test.[2]  Under this test, also called the *Calder* "effects test"

9    after the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), purposeful direction

10   has three requirements: "the defendant allegedly [must] have (1) committed an intentional act,

11   (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

12   suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433

13   F.3d 1199, 1206 (9th Cir. 2006) (citation omitted).  Notably, the *Yahoo!* court clarified that the

14   "brunt" of the harm need not be felt in the forum state as long a jurisdictionally sufficient amount

15   is suffered there, even if more harm might have been suffered in another state. *Id.* at 1207.

16                          a)    Defendant Purposefully Directed
                                  His Actions at the Forum State
17

18        Defendant's actions in this case satisfy all three requirements of the "purposeful

19   direction" or *Calder* test, thus satisfying the first prong of the specific personal jurisdiction

20   analysis.  Alternatively, Defendant meets the first prong of the specific jurisdiction test because

21   of the nature of the web sites located at each of the FRAXEL Domain Names.

22

23   _____

24   [2] *See Panavision*, 141 F.3d at 1321 (describing trademark infringement as "akin to a tort
     case"); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 720 (9th Cir. 2004)
     (explaining that, for purposes of statute of limitations, "trademark infringement generally sounds
25   in tort"). Courts often use the phrase "purposeful availment," in shorthand fashion, to include
     both purposeful availment and purposeful direction. *See, e.g., Harris Rutsky & Co. Ins. Servs. v.*
26   *Bell & Clements Ltd*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citation omitted). Availment and
     direction are, in fact, two distinct concepts, and a purposeful direction analysis is most often used
27   in suits sounding in tort. *See, e.g., Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.
     2002); *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (noting that the Ninth
28   Circuit applies different purposeful availment tests to contract and tort cases).

                                        - 6 -

1   As for the "purposeful direction" test: <u>First</u>, Defendant intentionally registered fifty-

2   seven (57) domain names that incorporate the well-known FRAXEL Mark in its entirety.

3   Indeed, Defendant admits that he intentionally chose to incorporate FRAXEL in his FRAXEL

4   Domain Names "with plans to explore existing and new relationships with physicians . . .,"

5   (McDaniel Aff., ¶ 8), a substantial number of whom are in California.

6      <u>Second</u>, Defendant expressly aimed his conduct at California when he used a mark

7   owned by Reliant, a California-based company.  In *Panavision Int'l v. Toeppen*, the court found

8   that the defendant cybersquatter, who registered the plaintiff's trademarks as his domain names

9   and subsequently sought to sell them to the plaintiff, a California corporation, had expressly

10  aimed his actions at California.  For, "[defendant's] conduct, as he knew it likely would, had the

11  effect of injuring [plaintiff] in California where [plaintiff] ha[d] its principal place of business."

12  *Id.* at 1322.

13     In addition, Defendant in this case used California locations in more than twenty-five

14  percent (25%) of the FRAXEL Domain Names, more than twice the number of FRAXEL

15  Domain Names which include locations from any other state.  To that end, Defendant admits his

16  intention to enter into contracts with physicians in the cities and geographic areas included in the

17  FRAXEL Domain Names, which include nine areas in California.  (McDaniel Aff., ¶ 14).  In

18  turn, prospective patients from the area can then contact the physicians through Defendant's web

19  site and using Defendant's telephone number.  (*Id.* at ¶ 6) ("The phone number is owned by me

20  but forwards any calls directly to the physician").  Thus, if Defendant's "business method" is

21  successful, the largest concentration of consumers likely to be deceived by Defendant's use of

22  Reliant's FRAXEL Mark will be located in California, which has the most locations of all

23  FRAXEL Domain Names.  This is especially true here because the State of California is one of

24  the most significant markets for Reliant's FRAXEL Systems, constituting approximately twenty-

25  three percent (23%) of FRAXEL Systems sales in the United States. (Sink Decl., at ¶ 7).

26  Accordingly, this factor supports a finding of personal jurisdiction.  *See Indianapolis Colts, Inc.*

27  *v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411-12 (7th Cir. 1994)

28  (in trademark infringement action, finding personal jurisdiction in Indiana over Maryland

- 7 -

1    defendant's use of "Baltimore CFL Colts," where largest concentration of consumers likely to be

2    confused were Indianapolis Colts fans in Indiana, even though the defendant had not yet licensed

3    "Baltimore CFL Colts" merchandise in Indiana).

4         Third, Defendant is causing harm it knows is likely to be suffered in the forum state.

5    When a company's trademarks are infringed, the company suffers harm in its primary place of

6    business. *Panavision,* 141 F.3d at 1321; *see also Mattel Inc. v. MCA Records, Inc.,* 296 F.3d

7    894, 899 (9th Cir. 2002) (personal jurisdiction over foreign defendants upheld where defendants

8    allegedly infringed plaintiff's trademarks and distributed infringing materials in the forum state).

9    As Reliant is headquartered in Mountain View, California, a jurisdictionally sufficient amount of

10   harm will be felt in California. *See Panavision*, 141 F.3d at 1321 (finding that the defendant

11   knew the plaintiff would suffer harm in California because, although a Delaware corporation, the

12   plaintiff's principal place of business was in California); *Rio Properties*, 284 F.3d at 1020

13   (finding injury to Nevada headquartered corporation in Nevada where defendant registered the

14   plaintiff's RIO trademark as part of the defendant's domain name and advertised services to

15   Nevada residents); *Mad Dogg Athletics, Inc. v. NYC Holding*, --- F. Supp. 2d ---, 2008 WL

16   2738090, *2 (C.D. Cal. Feb. 20, 2008) ("by trafficking in domain names bearing infringements

17   of the trademarks of a California business, Defendant both purposefully availed itself of the

18   benefits of the forum state and committed a tort directed at, and likely to cause harm in, the

19   forum state of California").

20        Based on the foregoing, Defendant has purposefully directed his conduct at California,

21   and his arguments to the contrary are unavailing. Defendant relies primarily on *Cybersell, Inc. v.*

22   *Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), a case whose "narrow scope . . . became apparent"

23   after the *Panavision* decision. *See Meade Instruments Corp. v. Reddwarf Starware LLC*, 47

24   U.S.P.Q.2d 1157, 1159, 1998 WL 377041 (C.D. Cal. 1998). In *Cybersell*, the defendant did

25   nothing more than post an essentially passive web site using the name "Cybersell," and this

26   occurred before the plaintiff even had a federal service mark registration for CYBERSELL.

27   *Cybersell*, 130 F.3d at 419 ("All that [the defendant] did was post an essentially passive home

28   page on the web, using the name "Cybersell," which [the plaintiff] was in the process of

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    registering as a federal service mark."). Otherwise, the defendant had "no contacts with Arizona

2    [the forum state]," "did nothing to encourage people in Arizona to access its site," and "there is

3    no evidence that any part of its business . . . was sought or achieved in Arizona." *Id.* at 415, 419.

4    　　　In contrast, Defendant in this case registered the FRAXEL Domain Names <u>after</u> Reliant

5    obtained a federal trademark registration for its FRAXEL Mark, contemplated that people of

6    California would access his sites by using geographic locations in California in the FRAXEL

7    Domain Names, and has admitted that he seeks to contract with physicians in California, which

8    will be a substantial portion of his business. Unlike in *Cybersell*, the Defendant here has done

9    "something more" than just register the FRAXEL Domain Names. *See Panavision*, 141 F.3d at

10   1322 (explaining that "something more" is required to show purposeful direction than just

11   posting a passive web site). There is no state in the nation that has a higher concentration of

12   geographic areas in the FRAXEL Domain Names than California, evidencing Defendant's intent

13   to direct his activities "in a substantial way" to California. Defendant's actions, therefore,

14   provide the "something more" that satisfies this element of the purposeful direction test.

15   　　　In addition to satisfying the "purposeful direction" test, Defendant independently satisfies

16   the purposeful availment prong of the specific jurisdiction test because of his web sites located at

17   the FRAXEL Domain Names (another fact that distinguishes *Cybersell*). In determining whether

18   a defendant's activity on the Internet subjects a defendant to personal jurisdiction, the Ninth

19   Circuit applies a "sliding scale" approach, under which "jurisdiction is directly proportionate to

20   the nature and quality of defendant's commercial activity conducted on the Internet." *Quokka*

21   *Sports, Inc. v. Cup Int'l Ltd.*, 99 F. Supp. 2d 1105, 1111 (N.D. Cal. 1999) (citing *Cybersell*, 130

22   F.3d at 418). Under this approach, "at one end of the spectrum is a situation where defendant

23   clearly does business over the Internet and so personal jurisdiction is proper, and at the other end

24   of spectrum is a situation where defendant simply posts information on a website accessible to

25   users in foreign jurisdictions and so personal jurisdiction is not proper." *See Coremetrics, Inc. v.*

26   *Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1019 (N.D. Cal. 2005) (explaining test in

27   parenthetical).

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    The web sites located at the FRAXEL Domain Names are not merely passive web sites.

2    They display active web pages that include links to web sites offering, among other things,

3    various skin treatment, hair removal, and other services which directly compete with Reliant's

4    products and services. (*See* Exhibits F and G to O'Brien Decl.). For example, the web site

5    located at <www.sanfranciscofraxel.com> displays a link to BOTOX services offered in San

6    Francisco.[3] (*See* Exhibit F to O'Brien Decl.). The harm in this case, therefore, results directly

7    from the interactive links, because users looking for physicians offering FRAXEL Systems

8    treatment in the San Francisco area instead will be directed to competing services.

9        In summary, Defendant's contacts with California in this case are not, as Defendant

10    suggests, "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S.

11    462, 475 (1985). (*See* Motion to Dismiss, p. 10). Rather, Defendant deliberately targeted

12    California by using the trademark of a California-based company in his FRAXEL Domain

13    Names, including nine California locales in the FRAXEL Domain Names, and implementing a

14    plan to contract with physicians all over the State of California. Defendant cannot be willing to

15    conduct business all over the State of California but be unwilling to litigate here when that

16    business injures a company headquartered in California.

17                    b)      Reliant's Claims Arise Out of and
18                            Relate to Defendant's Actions Directed at the Forum State

19        The second requirement of the test for specific personal jurisdiction is whether or not the

20    plaintiff's claims arise out of and relate to defendant's activities in the forum state. The Ninth

21    Circuit requires a showing that "the plaintiff…would not have been injured 'but for' the

22    _____

23        [3] Defendant claims that GoDaddy, the registrar through which he registered the FRAXEL
      Domain Names, is responsible for this content. (McDaniel Aff., ¶¶ 10 – 13). Defendant,
24    however, chose to use GoDaddy as his registrar and was required to agree to GoDaddy's Parked
      Page Service Agreement, the terms of which authorize GoDaddy to post the very pages from
25    which Defendant tries to distance himself. (*See* Exhibits D and E to O'Brien Decl.). In similar
      circumstances, World Intellectual Property Organization ("WIPO") panels deciding domain
26    name disputes have found that a defendant cannot claim ignorance of GoDaddy's practices. *See,*
      *e.g., Owens Corning v. NA*, WIPO Case No. D2007-1143, *available at*
27    http://www.wipo.int/amc/en/domains/decisions/html/2007/d2007-1143.html. (October 1, 2007)
      (finding that Respondent must have known that Internet users seeking information about
28    Complainant's products would then find themselves at a web site placed by GoDaddy advertising
      other goods and services).

- 10 -

1  defendant['s]...conduct directed toward" plaintiff in the forum state. *Panavision*, 141 F.3d at

2  1322.

3         Here, Reliant would not have been injured "but for" Defendant's registration of the

4  FRAXEL Domain Names and deliberate infringement of the trademark rights of Reliant, a

5  company headquartered in this forum.  In *Panavision*, the court found that "[the plaintiff's]

6  registration of Panavision's trademarks as his own domain names on the Internet had the effect of

7  injuring Panavision in California." *Id.*  Based on this, the court concluded that, "[b]ut for [the

8  defendant's] conduct, this injury would not have occurred." *Id.*  For identical reasons, Reliant's

9  injury would not have occurred "but for" Defendant's conduct, and this prong is satisfied.

10                      c)      Exercise of Personal Jurisdiction
                                <u>over Defendant is Reasonable</u>
11

12         Once the Court finds that the first two specific jurisdiction factors are satisfied, there is a

13  presumption that the exercise of jurisdiction is reasonable. *Ballard v. Savage*, 65 F.3d 1495,

14  1501 (9th Cir. 1995) (citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990)).  The

15  defendant then bears the "heavy burden of rebutting the strong presumption in favor of

16  jurisdiction." *Id.*  Here, Defendant cannot carry that heavy burden.

17         In determining whether or not specific jurisdiction over a defendant is reasonable, courts

18  weigh the following seven factors:

19                 (1) The extent of the defendant's purposeful interjection; (2) the burden on the

20                 defendant of defending in the forum; (3) the extent of conflict with the

21                 sovereignty of the defendant's state; (4) the forum state's interest in adjudicating

22                 the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

23                 importance of the forum to the plaintiff's interest in convenient and effective

24                 relief; and (7) the existence of an alternative forum.

25  *Panavision*, 141 F.3d at 1323 (citing *Burger King*, 471 U.S. at 476-77).

26

27

28

- 11 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1            *(1)    Defendant Purposefully Interjected*
                     <u>*Himself Into California's Affairs*</u>

2

3           This factor measures the degree of the defendant's interjection into the forum state, even

4 where, as here, that interjection is sufficient to satisfy the purposeful availment or direction

5 prong. *Panavision*, 141 F.3d at 1323. In *Panavision*, the Ninth Circuit found that the

6 defendant's degree of interjection was "substantial" where it registered a California company's

7 trademarks as his domain names and sent a letter to the plaintiff demanding money to release the

8 domain names. *Id.*; *see also Quokka Sports, Inc.*, 99 F. Supp. 2d at 1113 (finding that New

9 Zealand defendants purposefully interjected their web site into the California and United States

10 markets where they registered a ".com" address and had content directed at U.S. consumers).

11 Likewise, in this case, Defendant has registered the trademarks of a California-based corporation

12 as his domain names, has registered the highest proportion of those FRAXEL Domain Names

13 using geographic locations in California, admittedly plans to contract with California physicians,

14 and uses the FRAXEL Domain Names for web sites directed to California consumers. This

15 factor favors Reliant.

16                             (2)    <u>*Burden on Defendant of Litigating in this Court*</u>

17           Plaintiff has chosen to file this suit in California, where it is located. Although

18 Defendant is located in Texas, this factor does not weigh against finding California to be a

19 reasonable choice of forum. The mere fact that Defendant is an individual does not tilt this

20 factor in his favor. In *Panavision*, the Ninth Circuit held that an individual residing in Illinois

21 was not so inconvenienced at having to litigate in California as to deprive him of Due Process.

22 *Panavision*, 141 F.3d at 1323.

23           In addition, although Defendant portrays himself as only an individual without resources

24 to litigate in California, he operates a company, AdSmart Medical, that touts itself as a "national"

25 business serving Fortune 500 companies. (*See* Exhibit B to O'Brien Decl.). Defendant also

26 admits he registered the FRAXEL Domain Names for the purpose of contracting with physicians

27 in at least nine California locations. Again, Defendant cannot be willing to conduct business all

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    over the State of California but be unwilling to litigate here when that business injures a

2    company headquartered in California.

3           Accordingly, this factor also supports the exercise of jurisdiction.

4                              (3)    *Extent of Conflict Between*
                                     *the Sovereignty of California and Texas*
5

6           Trademark infringement and cybersquatting are all issues governed by federal law, and

7    Reliant's state law claims for unfair competition under the common law and the California Unfair

8    Practices Act mirror the federal standard for trademark infringement under the Lanham Act. *See*

9    *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held

10   that state common law claims of unfair competition and actions pursuant to California Business

11   and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham

12   Act." (citations omitted)). Therefore, there is no sovereignty conflict between California and

13   Texas.

14                             (4)    *The Forum State's Interest in Adjudicating the Dispute*

15          "California maintains a strong interest in providing an effective means of redress for its

16   residents tortiously injured." *Panavision*, 141 F.3d at 1323 (quoting *Gordy v. Daily News, L.P.*,

17   95 F.3d 829, 836 (9th Cir. 1996)). Reliant's principal place of business is in California, which is

18   sufficient for this factor to favor Reliant. *Id.*

19                             (5)    *The Most Efficient Judicial Resolution of the Controversy*

20          This factor mainly concerns the location of witnesses and evidence. Given modern

21   advances in travel and communication, however, this factor no longer weighs heavily in the

22   reasonableness analysis. *Id.*; *see also Quokka Sports, Inc.*, 99 F. Supp. 2d at 1113-14 (same).

23   Because Reliant is headquartered in California, the vast majority of Reliant's witnesses and

24   documents regarding its use of the FRAXEL Mark are located in California. Moreover, as

25   Defendant is a sole proprietor, it would clearly appear that more witnesses will be located in

26   California than in Texas.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1                             (6)     *The Relation of the Forum to*
                                              *Reliant's Interest in Convenient and Effective Relief*

2           Reliant chose California as the forum in which to seek relief because Reliant is located in

3 California, it suffers harm caused by Defendant's trademark infringement at its principal place of

4 business in California, and its marketing and sales of products bearing the trademarks at issue are

5 administered from this location as well.  As such, this forum is most convenient and effective for

6 Reliant.

7                             (7)     *The Existence of an Alternative Forum*

8           Courts accord great weight to the plaintiff's choice of forum.  *Piper Aircraft Co. v.*

9 *Reyno*, 454 U.S. 235, 241 (1981).  While Texas could be a potential alternative forum, Reliant

10 has chosen to bring suit in this Court, which is also an appropriate forum.

11           In summary, each of the factors discussed above weighs in favor of finding that this

12 Court's exercise of personal jurisdiction over Defendant is reasonable.  As indicated above,

13 satisfaction of the first two prongs of the specific jurisdiction analysis creates a presumption that

14 jurisdiction is reasonable, and the defendant bears a heavy burden to rebut that presumption.

15 *Ballard*, 65 F.3d at 1501 (9th Cir. 1995) (citation omitted).  Defendant has failed to meet his

16 burden in this case.

17         **B.**     **Defendant's Request for Attorneys' Fees Is Premature And Without Merit**

18           The Court should not consider Defendant's meritless request for attorneys' fees.

19 Defendant has chosen to proceed *pro se* in this action.  Statutorily provided attorneys' fees are

20 not available for non-attorney *pro se* litigants.  *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991)

21 ("The Circuits are in agreement, however, on the proposition that a *pro se* litigant who is *not* a

22 lawyer is *not* entitled to attorney's fees") (emphasis in original).  Even if Defendant's status did

23 not preclude him from seeking fees, his request is both premature and without merit.

24           Defendant relies solely on *Noxell Corp. v. Firehouse No. 1, Bar-B-Que Restaurant*, 771

25 F.2d 521, 525 (D.C. Cir. 1985), which is not binding on this Court and readily distinguishable.

26 *Noxell*, a 2-1 decision, involved a question of venue, not personal jurisdiction.  The plaintiff in

27 *Noxell*, a Maryland corporation, chose to bring suit against California defendants in the District

28 Court for the District of Columbia, a forum unrelated to either party.  In contrast, Reliant has

- 14 -

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    sued in its home forum, which is also the location of the harm caused by Defendant's trademark

2    infringement.  Moreover, the defendants in *Noxell* did not target their business at any particular

3    forum, much less the chosen forum, and did minimal business (about 1.5%) in the chosen forum

4    in that case.  Here, Defendant works through a company that advertises itself as operating

5    nationally and intends specifically to enter into contracts with physicians in nine cities in

6    California, over twenty-five percent (25%) of the total areas included in the FRAXEL Domain

7    Names.  *Noxell*, therefore, does not support Defendant's position.

8        Not only is this case not "exceptional" within the meaning of the Lanham Act's attorneys'

9    fees provision, 15 U.S.C. § 1117(a), the record sufficiently establishes that Defendant is subject

10    to personal jurisdiction in this forum.

11    **C.    Reliant Requests Discovery If There Is Any Doubt As To Jurisdiction**

12        The record establishes this Court's personal jurisdiction over Defendant.  If there is any

13    doubt on this point, however, Reliant requests limited discovery to determine, among other

14    things, the full extent of Defendant's contacts with California, how he chose the nine California

15    cities or geographic areas he used in the FRAXEL Domain Names, his marketing efforts directed

16    at physicians in those areas, and similar information.  Discovery may be especially necessary in

17    this case because Reliant has learned facts that are inconsistent with statements in Defendant's

18    sworn affidavit and Motion to Dismiss.  *See infra*, Section II.

19        "A court may permit discovery to aid in determining whether it has in personam

20    jurisdiction." *Data Disc*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express*

21    *Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)).  Discovery in this situation can be granted "where

22    pertinent facts bearing on the question of jurisdiction are controverted or where a more

23    satisfactory showing of the facts is necessary." *Id.*

24        In addition, Reliant does not have sufficient facts to determine whether Defendant is

25    subject to general jurisdiction in California.  A defendant whose activities in a forum state are

26    "substantial" or "continuous and systematic" may be subject to general jurisdiction in that state.

27    *Panavision*, 141 F.3d at 1320.  Although Defendant admits that "[i]n some of the cities I have

28    existing contracts with physicians who may provide Fraxel treatments," he does not indicate

- 15 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    which cities, how many physicians, or for how long these contracts have existed. (McDaniel

2    Aff., ¶ 14). These facts are relevant in determining whether Defendant is subject to general

3    jurisdiction in California. Moreover, as stated above, Defendant's affidavit minimizing his

4    contacts with California may not be credible.

5          Accordingly, if the Court finds that the current record does not establish personal

6    jurisdiction over Defendant, Reliant respectfully requests an opportunity to take limited

7    discovery for a sixty (60) day period to respond fully to Defendant's Motion to Dismiss.

8    **IV.    <u>CONCLUSION</u>**

9          For the reasons stated above, the current record sufficiently demonstrates that Defendant

10   is subject to personal jurisdiction in this forum. Defendant has targeted California specifically

11   by (1) infringing trademarks owned by a corporation whose principal place of business is in

12   California; (2) registering fifteen FRAXEL Domain Names (more than twenty-five percent

13   (25%) of the total number of FRAXEL Domain Names) that include geographic locations in

14   California and are directed to California consumers; and (3) using these domain names as part of

15   an admitted scheme to obtain business from California physicians who offer services in

16   California. Accordingly, Reliant requests that the Court deny Defendant's Motion to Dismiss for

17   Lack of Personal Jurisdiction or, alternatively, allow Reliant to engage in limited discovery to

18   establish that Defendant is subject to personal jurisdiction in this forum.

19   Dated: August /5, 2008

20

21                                         GLYNN & FINLEY, LLP
                                           CLEMENT L. GLYNN
22                                         One Walnut Creek Center
                                           100 Pringle Avenue, Suite 500
23                                         Walnut Creek, CA 94596

24                                         By _____

25                                         Attorneys for Plaintiff
                                           Reliant Technologies, Inc.

26

27

28

- 16 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS